UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BONNITA E. MCDOUGALL,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>    Defendant. | No. CV-07-0114-JPH<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS |

BEFORE THE COURT are Plaintiff's Motion for Summary Judgment (Ct. Rec. 17) and Defendant's Motion for Summary Judgment (Ct. Rec. 20), noted for hearing without oral argument on October 22, 2007. (Ct. Rec. 12.) Attorney Jeffrey Schwab represents Plaintiff; Special Assistant United States Attorney Nancy Mishalanie represents the Commissioner of Social Security ("Commissioner"). The parties have consented to proceed before a magistrate judge. (Ct. Rec. 15.) After reviewing the administrative record and the briefs filed by the parties, the court **grants** Plaintiff's Motion for Summary Judgment (Ct. Rec. 17) and remands for further administrative proceedings. Defendant's Motion for Summary Judgment (Ct. Rec. 20) is **denied**.

## **JURISDICTION**

Plaintiff filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits on November 14, 2003, alleging onset as of August 20, 2003, due to fibromyalgia, status post carpel tunnel release, obesity, hemiathroplasty in the right knee, right

shoulder rotator cuff tendonitis, and major depressive disorder.  (Tr. 95-98, 280-282.)  The applications were denied initially and on reconsideration. (Tr. 283-290, 292-296.)  Administrative Law Judge (ALJ) Riley J. Atkins held a hearing on March 1, 2006.  (Tr. 315-341.)  Plaintiff and vocational expert Nancy Bloom testified.  The ALJ issued a decision on April 12, 2006, finding that Plaintiff was not disabled.  (Tr. 38-47.)   The Appeals Council considered additional evidence and denied a request for review on March 29, 2007. (Tr. 6-9).  Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g). (Ct. Rec. 1, 4).

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both Plaintiff and the Commissioner and will only be summarized here.  Plaintiff was 50 years old on the onset date. (Tr. 45, 107.)   She earned a GED and completed one year of college. (Tr. 116, 317.)  Plaintiff has worked as a cashier, customer service clerk, caregiver, receptionist, reservation and travel agent, catering truck driver, nanny, telemarketer, and deli clerk. (Tr. 335-336.)  She alleges that since her disability onset date of August 20, 2003, she has been unable to work due to carpal tunnel syndrome, osteoarthritis in both knees, lower back pain, sleep apnea, fibromyalgia, depression, and lack of concentration and memory.  (Tr. 110.)

## SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also provides that a Plaintiff shall be determined to be under a disability only if his impairments are of such severity that Plaintiff is not only unable to do his previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  Thus, the definition of disability consists of both medical and vocational

components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he is engaged in substantial gainful activities. If he is, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is not, the decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work he has performed in the past. If plaintiff is able to perform his previous work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, plaintiff's residual functional capacity ("RFC") assessment is considered. If plaintiff cannot perform this work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of his residual functional capacity and his age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once plaintiff establishes that a physical or mental impairment prevents him from engaging in his previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which

Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## ALJ'S FINDINGS

As a preliminary matter, the ALJ noted that plaintiff earned sufficient quarters of coverage to remain insured for DIB purposes through December 31, 2008. (Tr. 38, 40.) The ALJ found at step one that plaintiff worked after the onset date (caring for an elderly woman) but apparently concluded that the work did not constitute substantial gainful activity. (Tr. 40.) At step two, the ALJ determined that plaintiff suffers from the severe impairments of fibromyalgia, status post carpal tunnel release, obesity, and a major depressive disorder. (Tr. 40.) The ALJ found at step three that the severity of plaintiff's impairments, considered singly or in combination, does not meet or medically equal one of the Listings impairments. (Tr. 42.) The ALJ found plaintiff's testimony regarding her limitations not fully credible. (Tr. 43.) At step four, the ALJ concluded that plaintiff has the RFC to perform a wide range of work at the light level of exertion. (Tr. 42-43.) At step four, with the assistance of a vocational expert, the ALJ concluded that plaintiff is unable to perform any past relevant work. (Tr. 45.) At step five, relying on the vocational expert's testimony, the ALJ found that there are jobs in the national economy that a person with plaintiff's limitations can perform, such as small products assembly, packing line worker, and electronics worker. (Tr. 46.) Accordingly, the ALJ determined at step five of the sequential evaluation process that plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 45-47.)

## ISSUES

Plaintiff contends that the ALJ erred as a matter of law when he weighed the medical evidence and when he failed to find plaintiff disabled based on the Medical-Vocational Guidelines. Specifically, plaintiff alleges that the ALJ erred when he

(1) weighed the opinions of treating and examining physicians;

(2) found at step two that plaintiff's right knee and right shoulder impairments are not severe;

(3) found at step three that plaintiff's impairments did not medically equal the requirements of Listings 1.02A or 1.03;

(4) failed to find plaintiff disabled under Section 201.12 or 201.14 of the Grids; and

(5) failed to include all established limitations in the hypothetical, resulting in error at step five. (Ct. Rec. 18 at 14-29).

The Commissioner opposes the Plaintiff's motion and asks that the ALJ's decision be affirmed.  (Ct. Rec. 21 at 20.)

## DISCUSSION

**A.  Weighing Medical Evidence**

Plaintiff alleges that the ALJ failed to properly credit the opinions of treating and examining physicians Drs. Long, Durante, Gramstad, and Anekwe  (Ct. Rec. 18 at 15-16, 18-21) and of psychologists Mary Jane Schreiver, M.S., LPC, Sean Connolly, Ph.D., and Henry Hanna, Ph.D.  (Ct. Rec. 18 at 21-23).  The Commissioner responds that the ALJ properly weighed the evidence.  (Ct. Rec. 21 at 6-17).

In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929. Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of symptoms. *Bunnell v. Sullivan*, 947, F. 2d 341, 345 (9th Cr. 1991).

A treating or examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F. 3d 587, 592 (9th Cir. 2004).  If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester v. Chater*, 81 F. 3d 821, 830 (9th Cir. 1996). If contradicted, the ALJ may reject an opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv*., 44 F. 3d 1453, 1463 (9th Cir. 1995). In addition to medical reports in the record, the analysis and opinion of a non-examining medical expert selected by an ALJ may be helpful to the adjudication. *Andrews v. Shalala*, 53 F. 3d 1035, 1041 (9th Cir. 1995) (*citing Magallanes v. Bowen*, 881 F. 2d 747, 753 (9th Cir. 1989).  Testimony

of a medical expert may serve as substantial evidence when supported by other evidence in the record. *Id.*

Examining Psychologists's Opinions

Psychologists Mary Jane Schreiver, M.S., and Dr. Connolly examined plaintiff on February 6, 2004 (about six months post onset), and diagnosed bipolar II disorder, most recent episode depressed, some histrionic personality disorder features, and a current GAF of 53[1]. (Tr. 187.) The ALJ opined:

"these diagnoses were not based on the use of standardized psychological testing. Additionally, she has not had treatment for any mental condition other than depression, and her treatment has consisted only of medication. I find no basis for any severe mental impairments other than depression." (Tr. 41.)

The ALJ is incorrect. Dr. Connolly administered several standardized tests of mental functioning and indicated the results: 1) plaintiff's intelligence is above average, based on test results; 2) plaintiff's recall appears good, based on test results; and 3) plaintiff's practical intelligence appears good, based on test results. (Tr. 186-187.)

Dr. Connolly notes observations of plaintiff and her responses to interview questions, which also form the basis of the diagnoses, including: (1) Plaintiff has felt depressed on and off for many years and feels she has anger problems. Although she generally denied bipolar symptoms, plaintiff indicated she can begin a job or relationship feeling "elated," feels she is making progress, and then everything "falls off." (Tr. 185.) (2) Plaintiff described family problems, significant loss of energy, a past suicide attempt, and no prior drug or alcohol abuse. (Tr. 185.) (3) She appeared neat, appropriately groomed, and showed no signs of distress. Plaintiff's thought process was coherent, mood slightly anxious and nervous, and affect restricted. (Tr. 185-186.)

The ALJ's rejection of the opinion of examining psychologist Dr. Connolly as not based on

---

[1] A Global Assessment of Functioning (GAF) of 53 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, FOURTH EDITION (DSM-IV) (1995) at p. 32.

standardized testing is not a specific and legitimate reason supported by substantial evidence because Dr. Connolly administered some standardized tests.   The ALJ erred.

An error is harmless when the correction of that error would not alter the result.  *See Johnson v. Shalala*, 60 F. 3d 1428, 1436 n. 9 (9th Cir. 1995).  An ALJ's decision will not be reversed for errors that are harmless.  *Burch v. Barnhart*, 400 F. 3d 676, 679 (9th Cir. 2005) (*citing Curry v. Sullivan*, 925 F. 2d 1127, 1131 (9th Cir. 1991).  The court is not confident that the ALJ would have reached the same result without the error because it appears that the ALJ misread the record.  The ALJ's reason is not supported by substantial evidence.  Accordingly, the error is not harmless.

Plaintiff contends that the ALJ also improperly weighed the medical evidence when he found at step two that plaintiff's right knee and right shoulder impairments are not severe.  (Ct. Rec. 18 at 14-16, 18-20).   The Commissioner responds that the ALJ properly weighed the medical evidence and his findings at step two should be affirmed.  (Ct. Rec. 21 at 6-12).

An impairment or combination of impairments may be found "not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb. Barnhart*, 433 F. 3d 683, 686-687 (9th Cir. 2005)(citing *Smolen v. Chater*, 80 F. 3d 1273, 1290 (9th Cir. 1996); *see Yuckert v. Bowen*, 841 F. 2d 303, 306 (9th Cir. 1988).  If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step.  S.S.R. No. 85-28 (1985).  Step two, then, is "a de minimus screening device [used] to dispose of groundless claims," *Smolen*, 80 F. 3d at 1290, and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is "clearly established by medical evidence." S.S.R. 85-28. The question on review is whether the ALJ had substantial evidence to find that the medical evidence clearly established that the claimant did not have a medically severe impairment or combination of impairments.  *Webb*, 433 F. 3d at 687; *see also Yuckert*, 841 F. 2d at 306.

Right Knee impairment

The ALJ found plaintiff's hemiarthroplasty in the right knee non-severe.  (Tr. 41.)   The

ALJ notes that on January 27, 2004 (about five months after onset), Joseph Long, M.D., evaluated plaintiff and diagnosed hemiarthroplasty in the right knee. Within weeks of plaintiff's hemiarthroplasty procedure, she was doing "very nicely." (Tr. 40, referring to Exhibit 5F/4; Tr. 41, referring to Exhibit 4F/2.) About three months later, plaintiff was very happy with the results of the procedure and was doing "great" postoperatively. (Tr. 41, referring to Exhibit 4F/2.) The ALJ noted that x-rays of the right knee on January 27, 2004, were within normal limits. (Tr. 41, referring to Exhibit 5F/6.)

Plaintiff contends that the ALJ's non-severe finding is unsupported by the evidence because the ALJ misquoted the January 27, 2004, x-ray report and disregarded Dr. Long's opinion on the same date that plaintiff's ability to sit, stand, move about, lift and carry are compromised by back and knee pain. (Ct. Rec. 18 at 14-16, referring to Tr. 181.) The Commissioner responds that Dr. Long noted plaintiff did not appear to be in pain, had full range of motion in the right knee, the only joint deformity was a "slight swelling of the right knee," and plaintiff's gait was "slightly abnormal with a limp that favors the right leg." (Ct. Rec. 21 at 7-8.) The Commissioner points out that Dr. Anekwe noted in August of 2005 that plaintiff "readily ambulate[d] across the room," her tandem walk was normal, gait was normal, and toe and heel walking were normal. (Ct. Rec. 21 at 8, referring to Tr. 258-259.)

On February 5, 2003, Anton Eilers, M.D., performed plaintiff's knee surgery:

> The patient is a 49-year old patient with medial compartment degenerative arthritis with bone-to-bone contact on the medial side, with burnishing of the bone on both sides of the medial compartment with a torn cartilage. She had osteophytes along the medial edge and posterior femoral condyle. These were all removed along with the anterior osteophyte that these people have in the intercondylar notch area. She had a little loose articular cartilage up into the patellofemoral groove. This was removed. . . . She had some chondromalacia of the patellofemoral joint, it was maybe grade 2, and mild chondromalacia of the lateral compartment. Otherwise, it looked normal.
>
> She was debrided of the osteophytes in her knee joint. Because of her old previous fracture of the femur, we were not able to put a guide pin to do a guide cut, so we did a free-hand cut of the femoral surface. We thought we had good position and alignment of that cut. We then did the usual free-hand cut of the tibia."

(Tr. 168.) Dr. Eilers's post-operative diagnosis was medial compartment degenerative arthritis of the right knee. (Tr. 168.) As the ALJ correctly notes, about three months later, on May 20, 2003, medical records indicate plaintiff is "doing very well"; on June 24, 2003, she was happy with the

- 9 -

results of her knee surgery. (Tr. 175.)

Not mentioned by the ALJ is Dr. Long's notation on January 27, 2004 (about five months post-onset and nearly a year after surgery), that plaintiff described a history of arthritis in her knees and shoulders that had grown "much worse." (Tr. 178.) Dr. Long notes plaintiff "had right hemiarthroplasty 2/5/03 and now has persistent pain in the medial compartment of the knee, pain with walking and weightbearing." (Tr. 178.) Dr. Long's review of plaintiff's medical records indicated that after knee surgery, plaintiff was prescribed bextra. In December of 2002, after being diagnosed by a rheumatologist with fibromyalgia, plaintiff was depressed and prescribed antidepressant medication (lexapro) which she continued to take. (Tr. 178-179.) Dr. Long observed that plaintiff's gait is abnormal with a limp that favors the right knee and right leg. (Tr. 179.) Dr. Long reviewed x-rays taken the same day as his exam. (Tr. 181, referring to Tr. 183.) These showed posttraumatic changes in the distal femur, status post medial hemiarthroplasty, and degenerative arthritic changes in the lateral compartment with no superimposed knee fractures. (Tr. 181.)

Dr. Long assessed, in addition to degenerative arthritic changes in the right knee lateral compartment, fibromyalgia, carpel tunnel syndrome, depression, obesity, and possible sleep apnea. (Tr. 181.) He opined that plaintiff's ability to do work activities such as sit, stand, move about, lift and carry are compromised by back and knee pain. (Tr. 181.) Dr. Long observed slight swelling in plaintiff's right knee. (Tr. 181.)

The ALJ found plaintiff's right knee impairment non-severe because plaintiff 1) was doing "very nicely" within weeks of the procedure; 2) stated about three months later that she was very happy with the surgery and was doing great postoperatively, and 3) right knee x-rays taken on January 27, 2004, were within normal limits. (Tr. 41.)

The ALJ fails to mention Dr. Long's notation about eleven months after the surgery that plaintiff was not doing well and Dr. Long opined that plaintiff's ability to do most work activities was compromised by knee and back pain. The ALJ erred by relying only on plaintiff's comments shortly after the surgery when he determined that her knee impairment was not severe. Additionally, as discussed, the knee x-rays that Dr. Long reviewed were within normal limits *only*

with respect to the lack of fracture; he opines that plaintiff has degenerative arthritic changes in the lateral compartment. The ALJ's step two analysis that plaintiff's knee impairment is not severe lacks requisite supporting medical evidence.

Right Shoulder impairment

The ALJ found at step two that plaintiff's right shoulder impairment was not severe because it did not meet the twelve month durational requirement:

> The claimant also has a history of right shoulder rotator cuff tendonitis (Exhibit 16F). Emmanuel Anekwe, M.D., examined the claimant on August 20, 2005 [two years after onset], and concluded she had moderate to severe frozen shoulder, right worse than left. He recommended a magnetic resonance imaging (MRI). (Exhibit 16F/4). An MRI of the right shoulder noted on August 26, 2005, probable partial thickness tear of the rotator cuff tendon associated with changes of tendinopathy (Exhibit 16F/8). Gregory D. Gramstad, M.D., noted on January 23, 2006, the claimant's recent x-rays of the right shoulder were essentially within normal limits. There was no evidence of acute trauma such as fracture or dislocation. She also had an MRI revealing no full thickness rotator cuff tear. (Exhibit 17F/4). The claimant's shoulder problem does not satisfy the durational requirement of a continuous impairment lasting 12 months or longer. Therefore, I find that she does not have a severe shoulder impairment.

(Tr. 41.)

Plaintiff argues that she reported right shoulder pain for five years to two separate physicians (referring to Gregory Gramstad, M.D., at Tr. 266 and Douglas Musgrave, M.D., at Tr. 270), and the ALJ failed to properly credit the opinions of Drs. Anekwe in 2005 and Durante in 2006, who both noted "limitations in a work environment relative to the right shoulder impairment." (Ct. Rec. 18 at 18-20).

The ALJ found that the plaintiff's right shoulder limitations would not meet the duration requirements of the Act, which is one year. 42 U.S.C. § 1382c(a)(3)(A). (Tr. 41.)

An MRI of plaintiff's right shoulder on August 26, 2005, showed a probable partial thickness tear of the rotator cuff tendon associated with changes of tendinopathy. (Tr. 264.) Further, Thomas Demlow, M.D., indicates "stigmata of impingement syndrome are present" and small joint effusion of the right shoulder is noted. (Tr. 264.) The ALJ relies on x-rays showing no shoulder fracture and observes that the twelve month durational requirement is not met. However, plaintiff's ongoing complaints of shoulder pain and objective medical test results such as the MRI indicating a condition likely to cause pain are sufficient to remove the impairment from "de minimus" status at step two of the sequential evaluation process.

- 11 -

The ALJ weighed plaintiff's credibility, a finding not challenged on appeal, when he assessed the medical evidence. It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala*, 53 F. 3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F. 2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying impairment, the ALJ may not discredit his testimony as to the severity of an impairment because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F. 3d 715, 722 (9th Cir. 1998)(citation omitted). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F. 3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F. 3d at 834; *Dodrill v. Shalala*, 12 F. 3d 915, 918 (9th Cir. 1993). Factors the ALJ may properly consider include claimant's reputation for truthfulness, prior inconsistent statements, unexplained failure to seek medical care or to follow a prescribed course of treatment, and the claimant's activities of daily living. *See Thomas v. Barnhart*, 278 F. 3d 947, 958-959 (9th Cir. 2002).

The ALJ gave several reasons for finding plaintiff less than completely credible: 1) the medical evidence does not support plaintiff's claims of severe right knee and shoulder impairments; 2) despite plaintiff's complaints of hand pain, she has not followed treatment recommendations of using a brace and has not undergone nerve conduction studies; 3) plaintiff has complained of back pain and muscle spasm but there is no evidence of a diagnosis or significant findings. (Tr. 43.) Examination on January 27, 2004, revealed full range of motion in the back, no evidence of back pain, loss of motion, atrophy, or back spasms; and 4) daily activities have been reasonably full, including working as a provider for an elderly woman, driving, shopping, paying bills, attending church, quilting, talking on the phone, and watching television. (Tr. 43.)

After making new determinations at step two with respect to right knee and right shoulder impairments, and properly considering the opinion of examining psychologist Dr. Connolly, the ALJ should re-evaluate plaintiff's credibility in light of these determinations.

**B.  Step Three - Listings Impairments**

Plaintiff contends that the ALJ erred by finding that her impairments, singly or in combination, did not meet or medically equal a Listings impairment.[2] Plaintiff argues that her impairments equaled in severity a Listings impairment, "probably" 1.02A [the major dysfunction of a joint, in this case, a major peripheral weight-bearing joint, the knee, due to any cause which results in an inability to ambulate effectively] or 1.03 [surgery on a major weight-bearing joint results in the inability to ambulate effectively or the ability is not expected to return within 12 months of onset]. (Ct. Rec. 18 at 23). Plaintiff argues that the impairments of her right knee, right shoulder, obesity, fibromyalgia, and depression combined to equal one of two Listings impairments. (Ct. Rec. 18 at 17). The Commissioner responds that plaintiff failed to meet her burden of producing medical evidence "that establishes all of the requisite medical findings in a listing," and the ALJ properly concluded that plaintiff's impairments did not medically equal the severity of a Listings impairment. (Ct. Rec. 21 at 12-17.)

On remand, after conducting a new step two analysis, the ALJ will need to continue with the sequential evaluation process, including determining at step three if the severity of any of plaintiff's impairments, singly or in combination, meet or equal a Listings impairment.

With respect to obesity, the ALJ correctly notes that it is no longer a Listing impairment but must be considered in connection with other existing impairments. On remand the effects of obesity on the ability to perform work-related activities should be considered as well.

Resolving conflicts in evidence is reserved for the trier of fact, not the reviewing court. *Richardson v. Perales*, 402 U.S. 389, 400 (1971) (citations omitted).

**C. Applying the Grids and Step Five Hypothetical**

Plaintiff alleges that the ALJ erred by not finding her disabled pursuant to the Grids and by failing to ask the VE a hypothetical that included all of her severe impairments. On remand the ALJ will make these determinations depending on the preceding steps in the sequential evaluation.

**CONCLUSION**

---

[2] *See* C.F.R. §§ 404.1520(a)(4)(ii), 416. 920(a)(4)(ii); 20 C.F.R. § 404, Subpt. P, App. 1.

- 13 -

Having reviewed the record and the ALJ's conclusions, this Court finds that the ALJ's decision is not supported by substantial evidence and free of legal error. And substantial issues remain unresolved.

Accordingly,

1. Plaintiff's Motion for Summary Judgment (**Ct. Rec. 17**) is **GRANTED** and the case is **REMANDED** for further administrative proceedings.

2. Defendant's Motion for Summary Judgment (**Ct. Rec. 20**) is **DENIED**.

3. The District Court Executive is directed to enter this Order, provide copies to counsel, and **CLOSE** the file.

**DATED** this 22nd day of January, 2008.

                                                  s/ James P. Hutton
                                                  JAMES P. HUTTON
                                    UNITED STATES MAGISTRATE JUDGE